IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BIGCOMMERCE, INC., | § § § § | |
| Plaintiff, | | |
| v. | § § § § § § | CIVIL NO. 1:23-CV-00298-RP |
| COVER GENIUS WARRANTY SERVICES, LLC, | | JURY TRIAL DEMANDED |
| Defendant. | | |

**DEFENDANT'S ANSWER TO PLAINTIFF'S ORIGINAL PETITION,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant Cover Genius Warranty Services, LLC ("Cover Genius"), files this Answer to Plaintiff BigCommerce Inc.'s ("BigCommerce") Original Petition. This Answer is accompanied by Cover Genius's affirmative defenses to BigCommerce's claims and Cover Genius's counterclaims against BigCommerce. Cover Genius shows as follows.

1

## COVER GENIUS'S ANSWER

In accordance with Federal Rule of Civil Procedure 8(b), Cover Genius responds to each of the allegations asserted in BigCommerce's Complaint as follows.

### I.  DISCOVERY CONTROL PLAN

1.      Plaintiff intends that discovery be conducted under Discovery Level 2.

**Response:**   Cover Genius denies this allegation because discovery will be conducted under the Federal Rules of Civil Procedure.

### II. PARTIES AND SERVICE

2.      Plaintiff BigCommerce, Inc., is Texas corporation whose principal place of business is 11305 Four Points Drive, Building II, Floor 1, Austin, TX 78726.

**Response:**   Cover Genius lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2.

3.      Defendant Cover Genius Warranty Services, LLC is a foreign limited liability company organized under the laws of Delaware and registered to do business in Texas, who may be served at its Texas registered agent Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, TX 78701.

**Response:** Admitted.

### III.  JURISDICTION AND VENUE

4.      This Court has jurisdiction over the parties and the subject matter of this controversy, as all or a substantial part of the events or omissions giving rise to these claims occurred in Travis County, Texas. Further, this suit is filed in the county where

Defendant solicited the transaction underlying this suit and where all payment was due. Finally, the parties agreed to jurisdiction and venue in Travis County, Texas.

**Response:** Cover Genius states that the allegations in Paragraph 4 constitute a legal conclusion to which no response is required. To the extent a response is required, Cover Genius does not challenge this Court's jurisdiction over this matter.

5. Plaintiff seeks monetary relief of over $1,000,000 but less than $2,000,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees.

**Response:** Cover Genius states that the allegations in Paragraph 5 constitute a legal conclusion to which no response is required. To the extent a response is required, Cover Genius lacks sufficient knowledge to admit or deny.

6. Venue is proper in Travis County, Texas, because the open account or contract made the basis of this lawsuit was entered into, performable, and payable in Travis County, Texas, and the services were performed in Travis County, Texas. In addition, all or a substantial part of the events or omissions giving rise to the claims in this Petition occurred in Travis County, Texas. Finally, the parties agreed to jurisdiction and venue in Travis County, Texas.

**Response:** Cover Genius states that the allegations in Paragraph 6 constitute a legal conclusion to which no response is required. To the extent a response is required, Cover Genius does not challenge this Court's jurisdiction over this matter.

## IV. FACTS

7. Plaintiff operates an ecommerce software company in Austin, Texas. Plaintiff provides its customers with a flexible ecommerce engine that allows its customers to operate online stores.

**Response:** Cover Genius lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 7.

8. Plaintiff and Defendant entered into that certain Technology Partner Program Agreement ("TPPA") as amended by that certain Addendum dated January l, 2022 ("Addendum", and together with the TPPA, the "Contract"). The Contract, as amended, provided for a start date of January 1, 2022 and an end date of December 31, 2023 with a net total of costs for Plaintiff's products and services of $1,200,000. A true and correct copy of the Contract is attached hereto.

**Response:** Cover Genius admits that the document referenced in Paragraph 8 exists and refers to the document for its contents; otherwise denied.

9. Plaintiff's action is founded, in part, upon an open account for services and is a claim for a liquidated money demand based upon business dealings between the parties on which a systematic record has been kept by Plaintiff.

**Response:** Denied.

10. Plaintiff attaches Exhibit "A", which is a declaration proving the open account, and providing a detailed description of the parties' open account (the "Account"). Exhibit "A," including subparts, is incorporated into this Petition for all purposes by reference.

**Response:**  Cover Genius admits that the document referenced in Paragraph 10 exists and refers to the document for its contents; otherwise denied.

11.   Defendant approved the products and service quote and authorized Plaintiff to proceed with the work. Defendant requested the products and services, which were priced according to the parties' Agreement, and were the usual, customary, and standard charges for the products and services provided.

**Response:**  Cover Genius lacks knowledge and information sufficient to form a belief about whether the services "were priced according to the Parties' Agreement and were the usual, customary, and standard charges for the products and services performed."  Cover Genius otherwise denies the allegations in Paragraph 11.

12.   After Plaintiff provided the valuable products and services and made numerous demands for Defendant to pay the outstanding invoices, Defendant failed to pay the agreed charges.

**Response:**  Denied.

13.   In addition, as result of Defendant's breach of the Contract, Defendant is required to pay BigCommerce for the twelve months of the Contract term following the breach, totaling an additional $700,000.

**Response:**  Denied.

## V. COUNT 1 – SUIT ON OPEN ACCOUNT

14.     Plaintiff incorporates its factual allegations contained in this Petition.

**Response:**  Cover Genius incorporates its responses to the factual allegations contained in this Petition.  Cover Genius otherwise denies the allegations in Paragraph 14.

15.     The Account consists of invoices and communications that accurately set forth the media services Plaintiff provided to Defendant, the dates of the performance or delivery of the products and services, the amounts that Plaintiff billed Defendant for the products and services, and the Defendant's agreement to pay for the products and services.

**Response:**  Denied.

16.     The Account represents a record of the transactions involving the products and services and is the same or similar to records Plaintiff systematically keeps in the ordinary course of business.

**Response:**  Denied.

17.     The Plaintiff's claim is just and true, it is due, and all just and lawful offsets, payments, and credits have been allowed.

**Response:**  Denied.

18.     The principal balance due on the Account is $500,000, excluding interest, attorney's fees, and costs.

**Response:**  Denied.

19. On January 6, 2023, Plaintiff made demand upon Defendant for payment of the products and services. Defendant has failed and refused, and still refuses, to pay them. A copy of Plaintiff's written demand upon Defendant is attached as Exhibit "B," which is incorporated into this Petition for all purposes by reference.

**Response**: Cover Genius admits that the document referenced in Paragraph 19 exists and refers to the document for its contents; otherwise denied.

### COUNT 2 – BREACH OF CONTRACT

20. Plaintiff incorporates its factual allegations contained in this Petition.

**Response**: Cover Genius incorporates its responses to the factual allegations contained in this Petition. Cover Genius otherwise denies the allegations in Paragraph 20.

21. In addition to the foregoing, Defendant breached Defendant's contract with Plaintiff.

**Response**: Denied.

22. Defendant's contract breach proximately caused Plaintiff's damages. As a result of the breach, Defendant owes Plaintiff $1,200,000.

**Response**: Denied.

### VI. COUNT 3 – QUANTUM MERUIT

23. Plaintiff incorporates its factual allegations contained in this Petition.

**Response**: Cover Genius incorporates its responses to the factual allegations contained in this Petition. Cover Genius otherwise denies the allegations in Paragraph 23.

24. Alternately, Plaintiff performed or delivered the products and services to Defendant, which were accepted by Defendant. Defendant accepted the products and services without compensating Plaintiff. Defendant accepted the products and services, and knew, or under the circumstances reasonably should have known, that Plaintiff expected payment from Defendant for the products and services. The products and services were reasonably worth the sum of at least $500,000 at the time they were furnished.

**Response:** Denied.

25. Defendant's conduct proximately caused Plaintiff's damages.

**Response:** Denied.

### VII. CONDITIONS PRECEDENT

26. All conditions precedent to Plaintiff's claims against the Defendant have occurred, been performed, satisfied, or otherwise fulfilled.

**Response:** Denied.

### VIII. ATTORNEY'S FEES

27. Under Texas law (including Chapter 38 of the Texas C.P.R.C.) Plaintiff is entitled to recover its reasonable and necessary attorney fees in its prosecution of this case. Plaintiff retained counsel, who has presented Plaintiff's demand to Defendant. Defendant has not tendered the amount owed within 30 days of when the claim was presented. To date Plaintiff has incurred at least $3,500 in attorney's fees and at the time of trial, it is estimated that Plaintiff will have incurred at least $175,000 in attorney's fees in pursuit of its claims.

**Response:** Cover Genius lacks knowledge or information sufficient to form a belief about whether "Plaintiff has incurred at least $3,500 in attorney's fees and at the time of trial, it is estimated that Plaintiff will have incurred at least $175,000 in attorney's fees in pursuit of its claims." Cover Genius otherwise denies the allegations in Paragraph 27.

### IX. PRAYER

28.  Defendant should be cited to appear and answer, and on final trial, Plaintiff should have a Judgment against Defendant, as follows:

   a.  Judgment against Defendant on Plaintiff's sworn account in the principal amount of $500,000, together with interest thereon, both prejudgment and post judgment, at the highest legal rate until paid;

   b.  Judgment against Defendant on Plaintiff's contract claim in the sum of at least $1,200,000, together with interest thereon, both prejudgment and post judgment, at the highest legal rate until paid;

   c.  Judgment against Defendant for reasonable and necessary attorney's fees and court costs incurred in this case, including $3,500 to date as of the date of this Original Petition, at least $175;000 at the time of trial, together with additional awards for the performance of additional servicers as may be incurred by Plaintiff post judgment;

   d.  Judgment against Defendant for Plaintiff's costs of Court and allowable expenses; and

   e.  Such other and further relief to which Plaintiff may show itself justly entitled to receive.

**Response:** Cover Genius states that the "Prayer" is not an allegation and therefore no response is required. To the extent a response is required, Cover Genius denies Plaintiff is entitled to any of the relief it seeks and requests that the Court enter judgment dismissing with prejudice the Original Petition, awarding costs and fees to Cover Genius, as may be allowed by law, and granting such other relief as the Court deems appropriate.

## COVER GENIUS'S AFFIRMATIVE DEFENSES

1. Plaintiff's claims are barred, in whole or in part, due to mutual mistake.

2. Plaintiff's claims are barred, in whole or in part, due to Plaintiff's prior material breach.

3. Plaintiff's claims are barred, in whole or in part, due to Plaintiff's unclean hands.

4. Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver and/or estoppel.

5. Plaintiff's claims are barred, in whole or in part, by the doctrine of equitable estoppel.

6. Plaintiff's claims are barred, in whole or in part, by the doctrine of promissory estoppel.

7. Plaintiff's claims are barred, in whole or in part, by the doctrine of quasi estoppel.

## COVER GENIUS'S COUNTERCLAIMS

### I.   THE PARTIES

1. Counter-Defendant BigCommerce is an e-commerce corporation organized and existing under the laws of the State of Texas, with its principal place of business at 11305 Four Points Drive, Building II, Floor 1, Austin, Texas 78726.

2. Counter-Plaintiff Cover Genius is a limited liability company organized and existing pursuant to the laws of the State of Delaware. Its sole member is Cover Genius, Inc., a Delaware corporation with its principal place of business at 11 West 42nd Street, 2nd Floor, New York, New York 10036. Cover Genius, Inc., is wholly owned by Cover Genius Holdings Proprietary Limited, an Australian entity with its principal place of business at Level 19, 45 Clarence Street, Sydney, New South Wales 2000, Australia. Cover Genius is therefore a citizen of Delaware and New York for diversity jurisdiction purposes. *See MidCap Media Finance, L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019).

3. Cover Genius uses innovative technologies to improve business processes in the warranty industry, with the goal of delivering efficiency and cost savings to obligors and consumers. It specializes in connecting obligors and customers through the vehicle of "embedded protection." Embedded protection is offered at the point of sale and typically bundled with the purchase of products or services. Buyers of embedded protection gain immediate coverage and are relieved of the burden of locating appropriate obligors and obtaining suitable warranties for products or services purchased on the internet.

## II.   JURISDICTION AND VENUE

4.   This Court has personal jurisdiction over BigCommerce because it is a Texas corporation and has its principal place of business in Austin, Travis County, Texas.

5.   This Court has subject-matter jurisdiction over Cover Genius's counterclaims against BigCommerce pursuant to 28 U.S.C. Section 1332.  BigCommerce and Cover Genius are diverse and the amount-in-controversy exceeds $75,000, exclusive of interests and costs.

6.   This Court alternatively has supplemental jurisdiction over Cover Genius's counterclaims against BigCommerce under 28 U.S.C. Section 1367 because they are so related to claims in this action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.   Venue is proper in this district and division pursuant to 28 U.S.C. Section 1441 because the state court where this suit was originally filed—the 345th District Court of Travis County, Austin, Texas—is in this district and division.

## III.   FACTS

8.   On April 28, 2021, Cover Genius entered an agreement with BigCommerce and its global affiliates (the "2021 Agreement").

9.   In 2022, Cover Genius and BigCommerce entered into a new agreement (the "2022 Agreement") to replace the 2021 Agreement, effective January 1, 2022.

10.   Either Cover Genius or BigCommerce could terminate the 2022 Agreement without cause upon ninety (90) days written notice.  Both parties also had the right to terminate the 2022 Agreement immediately for prior material breach by the other party.

11. Under the 2022 Agreement, BigCommerce was contractually obligated to perform certain marketing activities for warranty products brokered by Cover Genius. In exchange, BigCommerce would receive ten percent (10%) of the gross price for each warranty product sold along with a payment made each quarter in 2022 if certain sales targets were not met ("Quarterly Payments").

12. To achieve sales targets, the 2022 Agreement identifies specific marketing services BigCommerce would undertake for Cover Genius. Among other things, BigCommerce committed to offering Cover Genius certain "Partner Benefits," including BigCommerce enablement, cross-selling, onsite partner enablement, partner management, quarterly business reviews, and shared Slack channels.

13. Cover Genius entered the 2022 Agreement for the purpose of connecting its warranty offerings to merchants on BigCommerce's e-commerce platform. In essence, Cover Genius wanted to offer warranty policies on goods and services sold through BigCommerce's platform. BigCommerce thus agreed to engage with merchants who use its e-commerce platform and market Cover Genius products to these merchants. But BigCommerce failed to fulfill those obligations.

14. Apart from shared Slack channels, BigCommerce provided none of the "Partner Benefits" promised to Cover Genius under the 2022 Agreement.

15. The terms of the 2022 Agreement required that BigCommerce account managers individually interface with partner merchants and make personal referrals to Cover Genius.

16. Both BigCommerce and Cover Genius mutually understood that such referrals would be to the decision-makers for warranty and warranty-adjacent matters, and thus could potentially result in sales by Cover Genius that would meet or exceed the revenue share thresholds identifies in the 2022 Agreement.

17. Contrary to both parties' expectations, BigCommerce account managers referred Cover Genius almost no potential deals where either a partner contact was involved or where BigCommerce partner merchant products could be bundled or integrated with Cover Genius warranties.

18. Virtually all of the limited number of leads or referrals provided by BigCommerce were to BigCommerce partner merchants that sold no products relevant to Cover Genius warranty offerings. For example, BigCommerce tried to refer Cover Genius to a firearms distributor, even though Cover Genius's warranty products plainly do not cover such items.

19. In fact, for the first six months of the 2022 Agreement, less than one referral per month from BigCommerce to Cover Genius even qualified as a potential merchant partner for Cover Genius warranty products.

20. The email campaigns that BigCommerce undertook on behalf of Cover Genius in 2022 also failed to meet contractual requirements. Because these emails did not go to relevant decision-makers, their click-through rate was dismal and significantly lower than BigCommerce's other email campaigns. Indeed, the click-through rate for the first quarter of 2022 was close to one percent (1%). And the click-through rate for emails sent by BigCommerce in the second quarter of 2022 was zero percent (0%).

21. Emblematic of BigCommerce's failure to perform its obligations under the 2022 Agreement, BigCommerce's marketing team never once held the quarterly business reviews to which Cover Genius was entitled.

22. BigCommerce also did not fulfill its promise to conduct a BigCommerce-funded "spiff initiative" on behalf of Cover Genius.

23. The failure of BigCommerce to perform its contractual obligations to Cover Genius happened because, among other things, BigCommerce account managers were not incentivized to introduce their partner merchants to Cover Genius. BigCommerce never took the time to explain to its team the nature of Cover Genius's business and warranty products.

24. In July 2022, Cover Genius raised serious concerns about BigCommerce's ineffective marketing efforts. BigCommerce responded to these concerns by conceding that the 2022 Agreement failed to accomplish its intended purpose.

25. During a July 2022 meeting—and at other times—BigCommerce Senior Director Matthew Crawford and other BigCommerce employees admitted to Cover Genius that: (1) BigCommerce's contacts at partner merchants were not the proper decision makers who could approve bundling of warranties sold by Cover Genius with partner merchant goods and services; (2) BigCommerce did not have access to the relevant individuals at its partner merchants who could meaningfully engage with Cover Genius; and (3) the traditional "advertising" methods called for in the 2022 Agreement were not the "correct" way to market Cover Genius products.

26. Although BigCommerce claimed that it would take remedial action by facilitating meetings with actual decision-makers at potential Cover Genius customers, BigCommerce did no such thing. Nor did BigCommerce try to make relevant contacts at its partner merchants on behalf of Cover Genius. BigCommerce instead did nothing to address or remedy its deficient performance.

27. BigCommerce also did not undertake any meaningful efforts to change its ineffective strategy for marketing Cover Genius products.

28. From September 2022 to November 2022, BigCommerce employees failed meaningfully to engage with Cover Genius.

29. During this same time period, BigCommerce only discussed Cover Genius products with a handful of merchants, many of which were not even possible Cover Genius customers due to the nature of their products.

30. BigCommerce's failure to perform breached its contract with Cover Genius. This non-performance by BigCommerce damaged Cover Genius by causing Cover Genius to lose revenue from its partnership with BigCommerce. Cover Genius also incurred consequential, incidental, and out-of-pocket expenses due to BigCommerce's breach of the 2022 Agreement.

31. Despite Cover Genius's desire for an amicable resolution, BigCommerce sent Cover Genius a January 6, 2023, demand letter seeking $1.2 million in damages and threatening legal action. BigCommerce then sued Cover Genius in state court.

32. Cover Genius subsequently removed the case to this Court and involved its diversity jurisdiction under 28 U.S.C. Section 1332.

## IV. COUNTERCLAIMS

### A. Breach of Contract

33. Cover Genius incorporates the factual allegations pleaded in connection with its answer, affirmative defenses, and counterclaims.

34. Cover Genius asserts a breach of contract claim against BigCommerce.

35. The 2022 Agreement is a valid contract.

36. Cover Genius performed its obligations under the 2022 Agreement by giving BigCommerce the information it needed to initiate partner marketing efforts.

37. BigCommerce breached the 2022 Agreement by failing to provide the Partner Benefits to which Cover Genius was contractually entitled.

38. BigCommerce's breach of the 2022 Agreement excused Cover Genius from further performance of the 2022 Agreement.

39. This breach of the 2022 Agreement by BigCommerce caused Cover Genius to sustain money damages of lost revenue, plus the consequential, incidental, and out-of-pocket expenses that Cover Genius incurred in attempting to secure performance by BigCommerce.

40. Cover Genius is entitled to recover its reasonable and necessary attorney's fees incurred in connection with this case.

### B. Declaratory Judgment

41. Cover Genius incorporates the factual allegations pleaded in connection with its answer, affirmative defenses, and counterclaims.

42. In the alternative to its breach of contract claim, Cover Genius requests a declaratory judgment that the 2022 Agreement is void for mutual mistake.

43. Absent mutual mistake, Cover Genius requests a declaratory judgment that its performance under the 2022 Agreement was excused because of BigCommerce's prior material breach, and that the 2022 Agreement was terminated for prior material breach such that Cover Genius owes BigCommerce nothing.

44. Cover Genius requests that this Court award its reasonable and necessary attorney's fees.

**C.   Attorney's Fees**

45. Cover Genius is entitled to recover its reasonable and necessary attorney's fees incurred in connection with this matter.

## VI.   PRAYER FOR RELIEF

46. Cover Genius prays that this Court enter judgment against Plaintiff and Counter-Defendant BigCommerce as follows:

a) Ordering that BigCommerce take nothing on its meritless claims against Cover Genius;

b) Declaring that BigCommerce breached the 2022 Agreement such that Cover Genius is entitled to damages; and

c) In the alternative, declaring the 2022 Agreement void for mutual mistake, or that Cover Genius's obligations under the 2022 Agreement were excused by BigCommerce's prior material breach such that Cover Genius owes BigCommerce nothing under this contract.

d) Awarding Cover Genius its reasonable and necessary attorney's fees incurred in connection with this matter.

## VII. JURY DEMAND

47. Cover Genius demands a trial by jury on all claims and issues triable to a jury, inclusive of BigCommerce's claims, Cover Genius's affirmative defenses, and Cover Genius's counterclaims against BigCommerce.

DATE: April 7, 2023    Respectfully submitted,

*/s/ Christopher W. Patton*
Christopher W. Patton
Texas Bar No. 24083634
cpatton@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
214-981-3800 – Telephone
214-981-3839 – Facsimile

**ATTORNEY FOR DEFENDANT COVER GENIUS WARRANTY SERVICES, LLC**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above instrument was electronically filed with the Clerk of Court for the United States District Court, Western District of Texas, Austin Division using the Case Management/Electronic Case Files system (CM/ECF). I certify that all counsel and parties of record were served electronically or by another means authorized by Federal Rule of Civil Procedure 5(b)(2) on April 7, 2023.

*/s/ Christopher W. Patton*
Christopher W. Patton